IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 17-92 |
| | ) | |
| WILLIAM THOMAS SPENCER | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Timothy M. Lanni, Assistant United States Attorney for said District, and respectfully submits this Response in Opposition to Defendant Spencer's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. No. 69.

Spencer seeks a reduction in his prison sentence under 18 U.S.C. § 3582(c)(1)(A), often described as the "compassionate release" statute, based on his claim that he has a heightened risk of contracting COVID-19. But he does not meet the statute's requirements for a reduction in sentence, and his Motion must be denied. While Spencer has properly submitted a request for release through BOP channels, which was denied, the motion must be denied because Spencer does not have any medical condition. Ultimately, a reduction in Spencer's sentence would not be consistent with § 1B1.13, as the defendant is a danger to the safety of the community, and would not be consistent with the § 3553(a) factors as required by § 3582(c)(1)(A). Spencer was arrested on state charges for possessing an assault firearm and numerous types of narcotics and released on bond. In the short amount of time between his state arrest and the return of the federal indictment, Spencer had found a new location and stocked it with drug paraphernalia, drug packaging material,

more narcotics, and another firearm. ATF recovered these items when arresting Spencer on the instant charges. Spencer should not be released.

Because Spencer has not met the statutory requirements for a reduction in sentence under § 3582(c)(1)(A), his motion must be denied.

## **BACKGROUND**

On March 28, 2017, defendant was charged in a three-count Indictment with possession with the intent to distribute heroin and cocaine base as well as possession of a firearm in furtherance of a drug trafficking crime. See ECF. No. 3. Defendant was charged for conduct occurring on February 11, 2017. Defendant was charged with similar offenses in state court on that date and released on bond. Defendant was arrested on the instant charges on March 31, 2017. During defendant's arrest on March 31, 2017, ATF recovered additional narcotics, drug paraphernalia, drug packaging material, and a firearm from the residence. Defendant had moved into the home after his February 11, 2017 arrest and was the registered tenant on the lease.

The Government moved for defendant's detention and he was held pending a temporary order of detention. See ECF. No. 13. On April 6, 2017, Judge Mitchell detained defendant pending trial. See ECF. No. 20. On September 6, 2018, defendant plead guilty to the three counts in the Indictment. See ECF. No. 48. On March 18, 2019, defendant was sentenced to a term of 18 months on Counts 1 and 2 and a consecutive term of 60 months on Count 3 for a total of 78 months. See ECF. No. 63. Defendant was sentenced on Counts 1 and 2 to a term almost forty percent under the bottom of his guideline range.

Despite only serving half of his sentence and having no medical condition, defendant now moves for release. See ECF. No. 69.

## ARGUMENT

### I.   Spencer Has Not Shown "Extraordinary and Compelling Reasons" for Release as Required by 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c), created by the Sentencing Reform Act of 1984, provides that "[t]he court may not modify a term of imprisonment that has become final except" in limited circumstances.   As relevant here, if BOP or the defendant files a timely motion under § 3582(c)(1)(A) with the district court, the court

> may reduce the term of imprisonment . . . *after considering the factors set forth in section 3553(a)* to the extent that they are applicable, *if it finds that*–
>
> > (i) *extraordinary and compelling reasons warrant such a reduction*…
> >
> > *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*….

18 U.S.C. § 3582(c)(1)(A) (emphasis added).   Section 603 of the First Step Act of 2018 amended § 3582(c)(1)(A) to allow the court to act "upon motion of the defendant" in addition to "upon motion of the Bureau of Prisons," assuming timeliness and the other conditions are met.   Pub. L. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.   However, the First Step Act did not change the substantive definition of "extraordinary and compelling reasons."

The Sentencing Reform Act of 1984 authorized the Sentencing Commission to define "extraordinary and compelling reasons."   *See* Pub. L. 98-473, § 217(a), 98 Stat. 1837, 2019 (enacting 28 U.S.C. § 994).   The Commission has fulfilled these tasks through its policy statement at U.S.S.G. § 1B1.13 and its application notes.   The policy statement echoes § 3582(c)(1)(A)'s requirement that the court determine that "extraordinary and compelling reasons warrant the reduction."   U.S.S.G. § 1B1.13(1)(A).   The court must also find that "the defendant is not a danger

to the safety of any other person or to the community" under 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13(2).[1]

Application Note 1 to U.S.S.G. § 1B1.13 sets forth the "extraordinary and compelling reasons" that may justify release under § 3582(c)(1)(A).  "[E]xtraordinary and compelling reasons" include "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 app. note 1.  A defendant must have a *current* illness, such as a "serious physical or medical condition," to meet these criteria.  The risk of contracting a disease *in the future* does not, on its own, satisfy subdivision 1(A).  As defendant has no medical condition and is barely in his twenties, he cannot have an extraordinary and compelling release to be released and his motion must be denied.

Defendant also argues that he should be released due to the conditions at FCI Elkton. Despite the severity of the outbreak at FCI Elkton, the Sixth Circuit has city approvingly the measures the staff at FCI Elkton have taken to curb the outbreak and prevent further transmission of the disease. Wilson, et al. v. Williams, et al., Crim No. No. 20-3447, (6th Cir., June 9, 2020, p. 14) ("Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" ).

FCI Elkton has taken extensive measures including:

> a six-phase action plan to reduce the risk of COVID-19 spread at Elkton…
> including screening for symptoms, educating staff and inmates about
> COVID-19, cancelling visitation, quarantining new inmates, implementing
> regular cleaning, providing disinfectant supplies, and providing masks. The

---

[1]     Although the body of the Guideline states that a court may act "[u]pon motion of the Director of the Bureau of Prisons," § 1B1.13, and therefore does not yet include the procedural change made by the First Step Act, that discrepancy is separate from the Application Note's definition of "extraordinary and compelling circumstances."  Thus, the Court should continue to rely upon the Application Note's guidance in evaluating "extraordinary and compelling circumstances."

BOP initally struggled to scale up its testing capacity just before the district court issued the preliminary injuction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

Id.

Given that the Sixth Circuit has vacated the preliminary injunction against FCI Elkton and approved the measures that it is taken to protect defendant from COVID-19, defendant's motion should also be denied.

### A. Defendant Has No Medical Condition And As Such Cannot Have a "Extraordinary and Compelling Reason" for Release under § 3582(c)(1)(A), Even in Combination with COVID-19.

Spencer does not claim to have any pre-existing "serious physical or medical condition," which can provide a qualifying reason for release.    Thus, Spencer cannot show that he has a condition that will "substantially diminish" his ability "to provide self-care within the environment of a correctional facility," even in the context of the COVID-19 pandemic.  For that reason, he does not satisfy subdivision 1(A) of the Sentencing Commission's definition of "extraordinary and compelling reasons" for release.  U.S.S.G. § 1B1.13 app. note 1.

Because Spencer does not have a pre-existing medical condition that qualifies as an "extraordinary and compelling reason" for release, this Court cannot grant his motion.  The United States recognizes "the risks that COVID-19 poses in the federal prison system."  *Raia*, 954 F.3d at 597.  "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *Id.*

Further, neither defendants nor this Court may create additional reasons for release under § 3582(c)(1)(A), beyond those determined by Congress, the Sentencing Commission, and the BOP.  "Congress patently did not" expand the definition of "extraordinary and compelling reasons" in the First Step Act, and courts therefore must follow the policy statement in § 1B1.13

"as it stands." *United States v. Lynn*, Crim. No. 89-72-WS, 2019 WL 3805349, at *2-4 (S.D. Ala. Aug. 13, 2019); *see also, e.g.*, *United States v. Eberhart*, No. 13-cr-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).   Whether or not the Sentencing Commission has recently amended § 1B1.13, the First Step Act did not change the detailed substantive standard for "extraordinary and compelling reasons" or silently repeal the Commission's sole authority to define that term.

Finally, several courts that have (incorrectly) interpreted the First Step Act as allowing courts to define new "extraordinary and compelling reasons" have also held that any such reasons "should be comparable to what the Commission has already articulated" in § 1B1.13.  *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 2046086, at *3 (D. Me. July 11, 2019).  Even under that standard, Spencer's motion should be denied.  The Commission's definition does not include the generalized risk of contracting an infectious disease, even a serious one such as COVID-19, but instead describes *current* medical conditions. The defendant's reasons for a sentence reduction are not "extraordinary and compelling" and do not permit a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A).

**B.   Deference to the Sentencing Commission and BOP Definitions Remains Appropriate During the COVID-19 Pandemic.**

By statute, the Sentencing Commission's definition of "extraordinary and compelling reasons" is binding when courts a request for compassionate release.  Section 3582's delegation of that power to the Commission is entirely appropriate: it furthers the goal of having a single nationwide standard for compassionate release (given the general principle of finality in criminal sentences), and respects the expertise of the Commission and BOP in determining that standard. Deference is especially important because BOP may release a prisoner to home confinement in appropriate circumstances as an alternative to compassionate release.

The Commission's limited definition of "extraordinary and compelling reasons" is especially important during the ongoing pandemic.  The Third Circuit has noted that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *Raia*, 954 F.3d at 597. Courts that set their own standards may cause inconsistent definitions of "extraordinary and compelling reasons," disparities between inmates, and the unnecessary release of dangerous defendants – particularly because nearly every federal prisoner could claim that continued imprisonment increases his or her risk of contracting COVID-19.  *See United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *3 n.16 (3d Cir. Apr. 1, 2020) (per curiam) (unpublished) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").  And by granting widespread compassionate release on a case-by-case basis, courts could increase, not decrease, the risk of COVID-19 transmission.  BOP will be forced to divert personnel and resources from its existing anti-virus efforts to process released inmates, screen them for COVID-19, and provide transportation for them – all of which will involve physical interactions that may spread the virus further.

Most importantly, Spencer's request for a reduction in sentence ignores the significant efforts BOP has already taken to protect inmates from the disease – including its expanded use of home confinement under 18 U.S.C. § 3624(c)(2).  As discussed above, BOP has transferred thousands of inmates to home confinement since March 26, 2020.  Following Congress's passage of the CARES Act on March 27, the Attorney General has now "expand[ed] the cohort of inmates who can be considered for home release" and directed BOP to give priority "to the most vulnerable

inmates at the most affected facilities." Memorandum from Attorney General to Director of Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19," Apr. 3, 2020, *available at* https://www.justice.gov/file/1266661/download. Protecting high-risk inmates through home confinement, rather than compassionate release, has several advantages. An inmate remains under BOP authority during home confinement and is subject to discipline for a violation of the confinement conditions – or even indictment for escape, should the defendant abscond. *See* 18 U.S.C. § 751(a); *United States v. Robinson*, 639 F. App'x 157, 157 (3d Cir. 2016) (unpublished). BOP may also seek to place a prisoner in temporary home confinement, or on furlough for medical or other reasons under 18 U.S.C. § 3622. Finally, BOP can apply a single standard for granting home confinement that is consistent across all facilities and that takes into account BOP's other efforts to combat the virus. The BOP's increased use of home confinement will result in many inmates' requests for compassionate release being "speedily dispatched" to their satisfaction. *Raia*, 954 F.3d at 597.

Spencer's Motion does not indicate whether he has requested that BOP release him to home confinement, for which he is now eligible. While BOP has full discretion as to whether to release an inmate to home confinement, it must consider any recommendation made by the sentencing court. *See* 18 U.S.C. § 3621(b)(4)(B). This Court may therefore recommend that BOP allow Spencer to serve the rest of his sentence on home confinement due to his heightened risk of complications from COVID-19. However, given Spencer's age and lack of any risk factors he has to contract COVID-19 as well as his high danger to the community, the Government would likely object to Spencer's release on home confinement. Ultimately, however, defendant, has not satisfied the Sentencing Commission's definition of "extraordinary and compelling reasons," and

thus is not statutorily eligible for compassionate release under § 3582(c)(1)(A).  His current Motion must therefore be denied.

## II. Even If Defendant Has Shown "Extraordinary and Compelling Reasons," Compassionate Release Is Not Appropriate Under the § 3553(a) Factors and § 1B1.13.

Even if "an inmate has established an extraordinary and compelling reason," assessment of the § 3553(a) factors "will often result in the conclusion that compassionate release should not be granted, except in cases in which the inmate clearly does not present a danger of recidivism or harm to the community and in addition either (a) has a grave condition that would justify compassionate release in ordinary times, or (b) has a relatively short period of time left to serve on the sentence." As defendant has exhibited dangerous conduct and recidivism, has no medical condition, and has only served half of his sentence, he should not be released

Even if Spencer has shown "extraordinary and compelling reasons" under the Sentencing Commission's definition, defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.  This Court must find under § 1B1.13 that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and must also consider the § 3553(a) factors in determining whether a reduction is appropriate.  18 U.S.C. § 3582(c)(1)(A). Here, the defendant remains a danger to society; in addition, the § 3553(a) factors continue to support the sentence this Court originally imposed.

Defendant at a very young age was arrested on serious state charges and released on bail. Before federal authorities could arrest him less than six weeks later, he was already engaged in the same conduct. While defendant received a significant sentence for this conduct, including a mandatory minimum term, defendant's exposure was much more significant. Defendant could have been charged separately for his conduct during his arrest. This could have resulted in a

separate case with separate mandatory minimums. However, defendant's subsequent conduct was incorporated as relevant conduct at sentencing in this instant case, drastically limiting his exposure. Additionally, recognizing defendant's age, lack of maturity, and upbringing, this Court sentenced defendant to a sentence underneath the low end of his advisory guidelines. Accordingly, defendant should not receive even further benefit in the form of a reduction of nearly half of his sentence.

The defendant's personal history and criminal record also suggests that his release may be particularly risky during the ongoing COVID-19 pandemic. Given his past disrespect for the law, it seems unlikely that Spencer will now comply with the directives of the CDC and government officials to practice social distancing and to stay at home unless necessary to access life-sustaining services. Instead, Spencer may choose to reassociate with his criminal associates in defiance of any stay-home order. That would pose risks to public safety and to public health. And should Spencer commit further crimes during the COVID-19 pandemic, he may place at risk not only crime victims, but also responding law enforcement officers who would come into contact with him and with each other. In short, releasing Spencer could increase, not decrease, the spread of COVID-19.

### III. If the Court Orders Compassionate Release, It Should Allow BOP a Reasonable Period of Time for Quarantine and to Process and Screen Spencer Before Release.

Finally, if the Court orders Spencer's compassionate release under § 3582(c)(1)(A) – which, for all the reasons stated above, it should not – it should allow BOP to place Spencer in a 14-day quarantine period and conduct medical clearance before release, in order to to minimize the possibility of any spread of COVID-19 from the inmate to the public. Such a period will also allow the BOP a reasonable time to allow the BOP to fulfill its obligations under certain federal statutes. See, e.g., 18 U.S.C. § 3771 (notification of victims and witnesses of inmate's release); 18 U.S.C. §§ 4042(b), (c) (notification of law enforcement officials of inmate's release); 42 U.S.C.

§ 14135a (collection of DNA samples).  In particular, when a prisoner who, like Spencer, has been convicted of a "drug trafficking crime," BOP must notify in writing "the chief law enforcement officers of each State, tribal, and local jurisdiction in which the prisoner will reside," "[a]t least 5 days prior to" the prisoner's release.  18 U.S.C. § 4042(b).  The U.S. Attorney's Office as well must notify crime victims of any release of the defendant.  18 U.S.C. § 3771(a)(2).

An orderly release process is particularly important during the COVID-19 pandemic, so that BOP can screen the inmate for the virus and arrange for transportation while minimizing the personal interactions required.  For comparison, the Attorney General has directed that inmates released to home detention be placed in a 14-day quarantine, either at a BOP facility or at their post-release residence.  Similar precautions are appropriate for individuals granted compassionate release, for the protection of those inmates, BOP personnel, and others at their release locations.

A brief delay in Spencer's release will also allow the BOP to make the necessary logistical arrangements for processing his release, including any transportation within the BOP that may be necessary.  However, the need for a delay in release underscores why release under § 3582(c)(1)(A) is not appropriate in this case.  The BOP has taken extensive action to mitigate the spread of COVID-19, such as transferring a significant number of high-risk prisoners to home confinement under § 3624(c)(2) – efforts that will only expand in the near future.  Spencer instead asks this Court to order compassionate release under § 3582(c)(1)(A), but he does not meet that statute's standards.  The possibility that Spencer will contract COVID-19 in the future is not an "extraordinary and compelling reason" for release under the Sentencing Commission's binding policy statement.  And even if it were, Spencer would present a danger to others if released, and the § 3553(a) factors do not support a reduction in his sentence.  This Court may recommend that the BOP include Spencer among the large numbers of prisoners it will release to home

confinement.  But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597.  This Court may not and should not grant that extraordinary remedy here.

WHEREFORE, the United States respectfully requests that Defendant's Motion for Reduction of Sentence be denied.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:      /s/ Timothy M. Lanni
         Timothy M. LAnni
         Assistant U.S. Attorney
         Joseph F. Weis, Jr. U.S. Courthouse
         700 Grant Street, Suite 4000
         Pittsburgh, Pennsylvania 15219
         (412) 644-3500 (Phone)
         NJ ID NO. 11242012